**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | |
|---|---|
| LIZA A. ZUNIGA, )<br>)<br>    **Plaintiff,** )<br>)<br>v. )<br>)<br>MERRICK GARLAND, Attorney General )<br>DEPARTMENT OF JUSTICE, )<br>FEDERAL BUREAU OF )<br>INVESTIGATIONS (FBI) )<br>)<br>    **Defendant.** ) | **CIVIL ACTION**<br>**NO.   3:22-CV-00070** |

## *COMPLAINT*

### *Introduction*

1. This is a complaint for damages, declaratory and injunctive relief authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e et seq. ("Title VII").

2. This lawsuit is brought to prevent Defendant, MERRICK GARLAND, ATTORNEY GENERAL, DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATIONS (FBI), pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e, et seq. ("Title VII"), from maintaining a policy, practice, custom or usage of discriminating against, Plaintiff, LIZA A. ZUNIGA, in regard to terms, conditions and privileges of employment, and for damages, and other equitable relief for Plaintiff, LIZA A. ZUNIGA, who has been discriminated against by Defendant on the basis of race/national origin (Hispanic), sex (female), sexual harassment, retaliation and hostile work environment.

### *Jury Demand*

3. A jury is hereby demanded.

*Jurisdiction and Venue*

4. This action is brought for a declaratory judgment, injunctive relief and compensatory damages, pursuant to 42 U.S.C. Section 1983, 20 U.S.C. Sections 1681-1688, 28 U.S.C. Sections 2201 and 2202. This Court has jurisdiction to hear the Plaintiff's claims pursuant to 28 U.S.C. Sections 1331, 1343(3) and (4) 1337 and 42 U.S.C. 2000e-5(f) [Section 706(f)(s) and (3) and 704(a) of Title VII].

5. Venue is proper in the Western District of Texas, El Paso Division pursuant to 28 U.S.C. Section 1391(b) as El Paso County, Texas is the county where the Defendant operates the MERRICK GARLAND, ATTORNEY GENERAL, DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATIONS (FBI), Plaintiff's employer. Further, all actions complained of herein occurred within the El Paso County, Texas.

*Parties*

6. **LIZA A. ZUNIGA** is a Hispanic-female citizen of the United States and a resident of the City of El Paso, El Paso County, Texas.

7. Plaintiff is employed by the Defendant, **MERRICK GARLAND, ATTORNEY GENERAL, DEPARTMENT OF JUSTICE, and FEDERAL BUREAU OF INVESTIGATIONS (FBI).** The Defendant maintains and administers records relevant to its employment practices. Service of process may be made upon the United States Attorney for the Western District of Texas, and the United States Attorney General, Department of Justice, by registered or certified mail, pursuant to the Federal Rules of Civil Procedure (Rules 4(I)(1)(A), (B) & (C)).

8. Defendant is an employer within the meaning of 42 U.S.C. 2000e, et seq., ("Title VII").

*Exhaustion of Remedies*

9. Plaintiff filed a formal complaint of discrimination. Such filing was within at least 45 days of the last act of which he complained. Plaintiff's formal complaint alleged denial of Plaintiff's rights, by Defendant, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., as amended by the Civil Rights Act of 1991. Specifically, LIZA A. ZUNIGA alleges that she was discriminated against because of her national origin (Hispanic), sex (female), sexual harassment, retaliation and hostile work environment.

10. All conditions precedent to the filing of the lawsuit has been met.

*Factual Allegations*

11. At the time of events giving rise to this complaint, Plaintiff worked as Staff Operations Specialist (SOS) with the Federal Bureau of Investigation (FBI), and assigned to the El Paso, Texas Division Field Office.

**Agency No. FBI-2019-00302**

**Disparate treatment by the Agency**

12. Plaintiff was an "aggrieved employee" when listed as not recommended for rehire despite an exemplary personnel record and the recipient of multiple awards, to include the prestigious FBI metal of excellence. The unjust comment on Plaintiff's personnel title blackballs Plaintiff with any future employer despite nearly ten (10) years of outstanding performance appraisals.

13. Plaintiff suffered personal deprivation. Plaintiff resigned and while Plaintiff was not fired, she was treated as an employee who had been. Only fired employees are walked out of the building. Plaintiff further lost her security clearance just like an employee who might be under an internal investigation.

14. ASAC, Mr. Fomby, Plaintiff, supervisor made comments about Plaintiff to other supervisors who would tell her but were not interviewed. ASAC, Mr. Fomby made comments about Plaintiff to other supervisors to make her seem useless and a liar.

15. Prior to Plaintiff's forced resignation, ASAC, Mr. Fomby was aware of her EEO activity in 2017, and continuing to Plaintiff's last day of employment on August 2, 2019. Plaintiff filed an initial EEO against ASAC, Mr. Fomby in April 2019 for reassigning Plaintiff. However, Plaintiff did not continue the investigation because ASAC, Mr. Fomby claimed "everyone" (i.e. all the intelligencde personnel) was being reassigned to a different squad. Plaintiff feared ASAC, Mr. Fomby would move people simply to prove her wrong.

16. Plaintiff was treated differently from other employees. Retiring or resigning employees did not lose their computer access, and they were certainly not escorted out of the building. ASAC, Mr. Fomby stated in the ROI that the escorting of employees started with Plaintiff, to make an example out of her. Prior to Plaintiff's resignation at least 20 individuals resigned, retired or relocated from under Fomby's management, and none were stripped of their access or escorted out by security.

**Adverse Employment Decision and Sexual Harassment**

17. Plaintiff has suffered an adverse employment action, was subjected to unwelcome harassment, was discriminated against and subjected to hostile work environment harassment based on national origin (Hispanic), sex (female), and reprisal for prior EEO activity, which affected a term, condition, or privilege of employment. Plaintiff was Former Staff Operations Specialist (SOS) with the Federal Bureau of Investigation (FBI), assigned to the El Paso Field Office (EP), El Paso, Texas.

18. In particular when she was constructively discharged. Furthermore, (1) On or about July 29, 2019, the Assistant Special Agent in Charge (ASAC) removed Plaintiff's computer access, and her

access to the Sensitive Compartmental Information Facility (SCIF); (2) On July 31, 2019, Plaintiff learned she would be walked out of the building at 9 a.m. on August 2, 2019, and not allowed to "finish the day."; (3) On July 31, 2019, Plaintiff was told the ASAC said she was "insubordinate and derelict in [her] duty," and that he questioned her "medical notes."; (4) Effective August 2, 2019, Plaintiff was constructively discharged; and (5) Plaintiff discovered that the ASAC did not recommend her for rehire on her SF-52. The notation of her Sf-52 of "not recommending her for rehire" has an immediate impact on Plaintiff's ability for return to the Agency or any other employment opportunity. Additionally the notation not only tarnishes Plaintiff's record but also negate the nearly ten years of documented outstanding performance.

19. Plaintiff exhausted all administrative remedied of her 2017 EEOC Complaint. The 2017 EEOC was finally appealed to the Western District of Texas on September 27, 2019. Furthermore, Plaintiff initiated complaint against ASAC, Mr. Fomby in April 2019, four months before being conwtuctually discharged.

20. On December 6, 2009, Plaintiff began her career in the FBI as an SOS assigned to EP. As an SOS, her primary responsibilities included providing investigative and tactical analytical support to various FBI investigations. Plaintiff's direct supervisor at the time of her resignation and rating official was Supervisory Intelligence Analyst (SIA) James Zumwalt. Her second-line supervisor and rating official was Assistant Special Agent in Charge (ASAC) Jermicha Fomby.

21. In approximately 2017, Plaintiff began experiencing discrimination and hostile work environment harassment from an EP Supervisory Special Agent (SSA). As a result, Plaintiff filed an EEO complaint that she hoped would result in an end to her disparate treatment. Unfortunately, the SSA began spreading false rumors about Plaintiff that severely tarnished her reputation to FBI EP Executive Management (EM). As a result, EP EM began additionally discriminating against

Plaintiff. Because Plaintiff always worked very hard and continually received excellent performance ratings, Plaintiff could only conclude that the treatment was a direct result of Plaintiff's national origin, sex, and reprisal for prior EEO activity.

22. Plaintiff's continued poor treatment culminated in 2019, when EP EM forced Plaintiff to transfer to a Violent Crimes Major Offenders (VCMO) squad. At the time, Plaintiff was performing well in her assigned squad and she made it very clear to EM that she did not want to transfer to VCMO. Ultimately, EM decided Plaintiff's wishes and concerns did not matter and forced her to transfer to the VCMO squad. Frustrated by her continued disparate treatment, Plaintiff considered filing another EEO complaint but instead decided to begin looking for outside employment. Because the entire situation was causing Plaintiff a great deal of emotional, mental, and physical stress, Plaintiff felt as though it was her only option.

23. On July 29, 2019, Plaintiff decided to change her career and submitted her resignation via email in part to the A/SIA from July 29, 2019 to August 2, 2019, Christina Arrayo, Acting Supervisory Intelligence Analyst (A/SIA) Cristina Arroyo. Plaintiff advised in the email that her resignation would take effect on August 2, 2019. Plaintiff additionally provided a doctor's note for medical appointments related to the stress the FBI had caused her, because Plaintiff's SIA, James Zumwalt, required such documentation from her as Plaintiff was taking SL for two-to-three hours at a time. In fact, the stress had caused Plaintiff such physical and mental issues that her doctor advised she should no longer work after 5 p.m.

24. Later in the morning, Arroyo advised Fomby about Plaintiff's resignation and stated that Fomby was rather "prickly." Arroyo continued that Fomby inquired about what predicated Plaintiff's resignation, which Arroyo reported she did not know.

25. On July 29, 2019, Plaintiff returned from lunch and Fomby was in the VCMO squad area.

Fomby did not say anything to Plaintiff despite the fact that they made eye contact. A few moments later, Fomby requested that Arroyo, who was sitting next to Plaintiff at the time, attend a meeting with him. Later in the afternoon, Arroyo returned from the meeting and informed Plaintiff that Fomby was removing Plaintiff's computer access. According to Arroyo, Fomby spoke to legal about Plaintiff's resignation email and now considered Plaintiff to be a security risk. Plaintiff advised Arroyo that without computer access there would be very little that Plaintiff could do to include completing the resignation paperwork, and retrieve important ISP information. Plaintiff then asked Arroyo something to the effect, "What should I do, just come in and sit here for the next four days?" Arroyo responded, "I guess."

26. On July 30, 2019, Arroyo and Plaintiff visited the EP Special Agent in Charge (SAC) Secretary to sign documents related to Plaintiff's resignation. After signing, Plaintiff asked the SAC Secretary if immediately removing a resigning employee's computer access was standard operating procedure. The SAC Secretary replied, "I don't know about that stuff. I handle the admin things only."

27. Later in the day, Plaintiff no longer had access to FBI computers and went to EP Supervisory Administrative Specialist (SAS) Mary Ambriz for help on retrieving my historical Performance Appraisal Reviews (PARS) for Plaintiff's personal records. During the meeting, the SAS said she heard Fomby removed Plaintiff's access and stated that it was, "A WTF moment. I've never heard of this being done before."

28. On July 31, 2019, SIA Gerardo Arellano informed Plaintiff that during a meeting, Fomby stated he had received complaints about Plaintiff. According to Arellano, Fomby advised that Plaintiff had not been available on multiple weekend callouts and Plaintiff was not available to work after 5 p.m. An SIA then informed Fomby that Plaintiff had provided a doctor's note stating

Plaintiff's inability to work after 5 p.m. for medical reasons. Arellano continued that Fomby then stated he didn't believe it because he sees Plaintiff running around his neighborhood. Plaintiff later learned from another SIA, Edward Milligan, who attended the referenced meeting that Fomby said Plaintiff was "insubordinate and derelict in her duty by refusing to respond to multiple VCMO callouts.

29. On August 2, 2019, Plaintiff was constructively discharged from the FBI and humiliatingly walked out of the building. A few days later, Plaintiff additionally learned that Fomby did not recommend her for future hire within the government.

30. Plaintiff's forced resignation was a last resort to end the mental, physical, and emotional stress caused by Fomby. However, Fomby's notation on the SF52 is continued harassment and emotional distress for the Plaintiff.

31. Fomby has blatantly retaliated against Plaintiff from the day Plaintiff tendered her resignation. Fomby has treated Plaintiff like a terminated employee under investigation for misconduct, and the treatment was demeaning and humiliating.

32. Fomby's actions clearly demonstrated the hostility and stress that caused Plaintiff physical, emotional, and mental anguish and culminated in Plaintiff's resignation. Fomby spoke ill of Plaintiff to others, yet he did not know Plaintiff, neither personally nor professionally. If he had spoken to Plaintiff personally, he would have known the exact reason for her medical notes without needing to make unfounded and incorrect judgments. Professionally, Plaintiff's PARS were nearly always Outstanding and a quick query of Plaintiff's work production would prove that she was not derelict.

33. Plaintiff was subjected to harassment and a hostile work environment when Fomby deemed Plaintiff a security risk based on her resignation and removed her computer clearance, even though Plaintiff was an exemplary employee and was never counseled for any reason throughout her duty

with the Agency.

34. However, she was insulted and demoralized by Fomby's actions were an abuse of power and offensive towards Plaintiff. Plaintiff's record was impeccable. However, ASAC, Mr. Fomby was angry he did not know why many people had left the El Paso Division during his regime, and he would make an example out of Plaintiff. Plaintiff was a victim of a hostile work environment.

## COUNT ONE
## TITLE VII VIOLATION - SEX (GENDER)

35. The Plaintiff realleges paragraphs 1 – 34 as if fully set forth herein.

36. Defendant discriminated against Plaintiff herein since the agents and employees of Defendant engaged in discrimination based on sex in violation of Title VII of the Civil Rights Act. Specifically, the Plaintiff suffered adverse employment consequences as a direct result of sex (female). As a direct and proximate result of these actions, Plaintiff suffered sex discrimination and sexual harassment.

37. By reason of the Defendant's actions, the Plaintiff found it necessary to retain the services of an attorney in these proceedings and heretofore and is therefore entitled to attorney's fees pursuant to Title VII and under the general equity Powers of the Court.

## COUNT TWO
## TITLE VII VIOLATION – NATIONAL ORIGIN (HISPANIC)

38. The Plaintiff re alleges paragraphs 1- 37 as if fully set forth herein.

39. Defendant discriminated against Plaintiff herein since the agents and employees of Defendant engaged in discrimination based on Race in violation of Title VII of the Civil Rights Act. Specifically, the Plaintiff suffered adverse employment consequences as a direct result of Race/National Origin (Hispanic). As a direct and proximate result of these actions, Plaintiff suffered Race/National Origin (Hispanic) discrimination harassment.

40. By reason of the Defendant's actions, the Plaintiff found it necessary to retain the services of

an attorney in these proceedings and heretofore and is therefore entitled to attorneys' fees pursuant to Title VII and under the general equity Powers of the Court.

### COUNT THREE
### HOSTILE WORK ENVIRONMENT

41. Plaintiff realleges paragraphs 1- 40 as if fully set forth herein.

42. The actions of Defendant constituted a hostile work environment against Plaintiff, in the creation and condonation of a hostile work atmosphere which changed the terms and conditions of her employment.

43. The unlawful employment practices in violation of the Civil Rights Act herein complained of, occurred in the course of Plaintiff's employment with Defendant, were carried on by Defendant's agents, servants, and employees and committed because of Plaintiff's national origin and female made the work environment one that a reasonable person could not endure without injury.

44. Defendant discriminated and retaliated against Plaintiff herein as a Hispanic/female with respect to the terms, conditions, privileges, advantages and benefits of her employment with Defendant. Specifically, Plaintiff was harassed, held to stricter standards of performance, and denied benefits of employment accorded other employees.

45. In addition, Plaintiff was treated dissimilarly from other employees.

46. By reason of the Defendant's actions, the Plaintiff found it necessary to retain the services of an attorney in these proceedings heretofore and is therefore entitled to attorney's fees pursuant to the Title VII, and under the General Equity Powers of the Court.

### COUNT FOUR
### REPRISAL/RETALIATION

47. The Plaintiff re-alleges paragraphs 1 - 46 as if fully set forth herein.

48. Defendant retaliated against Plaintiff, herein since it engaged in reprisal and retaliation in

violation of Title VII of the Civil Rights Act. Specifically, Plaintiff suffered adverse employment consequences as a direct result of her participation or assistance in current and prior EEOC process. As a direct and proximate result of these actions, Plaintiff suffered retaliation and reprisal.

49. By reason of the Defendant's actions, Plaintiff found it necessary to retain the services of an attorney in these proceedings and heretofore and is therefore entitled to attorney's fees pursuant to Title VII, and under the General Equity Powers of the Court.

WHEREFORE, Plaintiff respectfully requests:

a. A declaratory judgment, declaring Defendant's acts, through the acts of its agents, employees and successors, herein complained of to be in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

b. Compensatory damages against the Defendant for each violation of Plaintiff's rights, as protected by Title VII and, for his pain, suffering, emotional distress, humiliation and for any resulting physical and emotional damages, in the amount of $300,000.00;

c. Attorney's fees, court costs, prejudgment and post judgment interest as provided by law including Title VII; and

d. Such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,

*The Law Office of Enrique Lopez*
701 N. St. Vrain Street
El Paso, Texas 79902
Telephone: (915) 351-0595
Facsimile: (915) 534-7207
elopezlawfirm@yahoo.com

By: /s/ Enrique Lopez
    ENRIQUE LOPEZ
    State Bar No.: 12563530

**Attorney for Plaintiff**